# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

|  |  |  |
|---|---|---|
| **ROBERT GARRETT, et al.,** | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL NO. 3:07CV286 |
| **C.T. WOODY, JR.,** | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendant C.T. Woody, Jr.'s (Defendant) motion for summary judgment (docket entry no. 35) The matter has been fully briefed and oral argument has been entertained. The matter is therefore ripe for resolution. For the reasons set forth herein, it is RECOMMENDED that Defendant's motion be DENIED.

### I. Factual Background

This case involves claims of race discrimination by the Plaintiffs, who are Caucasian, against the Defendant, who is African American. The central issue is the claim by Plaintiffs that they were terminated by Defendant from their employment under his control as Sheriff for impermissible racial reasons.

1

1.     **Facts Relevant to Plaintiff Garrett**

The incident leading to Plaintiff Robert Garrett's termination occurred on September 27, 2006. (Am. Compl. ¶ 1.) Garrett "processed" Michael Lee Boyd (Boyd), an inmate who had been transported in custody from a state courts building (the John Marshall Courts building) to a temporary holding facility (the lockup at the City of Richmond, Virginia's Public Safety Building). (Id.; Def.'s Mem. in Supp. of Mot. for Summ. J. (Def.'s Mem.) at 6.) As asserted in the Amended Complaint, departmental policy dictated that a supervisor had to make the final decision as to whether an inmate was "cleared" to be released. (Am. Compl. ¶ 2.) Garrett asserts that a co-worker, Deputy Letisha Ward, checked Boyd's records for outstanding warrants without finding any. (Id. at ¶ 3.) Deputy Ward then gave Boyd's paperwork to Sergeant Supervisor Naitraj David (an African American male) and informed Sergeant David that Boyd had no outstanding warrants that would prevent his release. (Id.) According to Plaintiff Garrett, Sergeant David then ordered Garrett to release inmate Boyd, and Garrett complied with the order. (Id. at ¶¶ 4-6.)

Within hours of the inmate's release, however, other employees discovered that the inmate was not supposed to have been released because of outstanding process that had not been discovered, and that he should have been returned to the jail. (Id. at ¶ 7.) On September 28, 2006 - one day after inmate Boyd's mistaken release - Plaintiff Garrett learned of his termination by the Defendant when two Sheriff's Office employees retrieved his badge and gun from him while he was seeking medical attention for unrelated reasons. (Id. at ¶ 9.)

Plaintiff Garrett acknowledges that he had previously been disciplined by the Defendant; however, he asserts that the previous discipline he received was also the result of racial

2

discrimination. (Id. at ¶¶ 11-15.) The prior incident involved Garrett's tenure as a shift supervisor along with a Lieutenant Michael Woolson and Sergeant Supervisor Deborah Dickerson on the 4:00 p.m. to 12:00 a.m. midnight shift at the jail. (Id. at ¶ 11.) Garrett and Woolson, both Caucasian, were demoted, both in rank and in pay, as a result of the Defendant "losing confidence" in all three supervisors, but Dickerson, an African American, was merely transferred and suffered no reduction in rank or pay. (Id. at ¶¶ 12-14.) Garrett contends that the situation is relevant to the case at hand because of the disparate discipline imposed with the racial circumstances of the three being the only distinguishing factor.

**2.      Facts Relevant to Plaintiff Aycock**

The incident that resulted in Plaintiff Aycock's termination occurred when Aycock processed inmate Giorgio Fulton for release. Inmate Fulton was also being held in lockup and was to be released following a DNA swab and warrant check. (Am. Compl. ¶ 16.) Aycock completed the swab and then asked the desk deputy if Fulton's warrant checks were "good." (Id. at ¶ 17.) Deputy Koger reportedly replied that the inmate was "good to go." (Id.) Aycock alleges that he also asked Sergeant David if Fulton was ready to be released, and Sergeant David allegedly ordered Aycock to release the inmate. (Id. at ¶¶ 18-19.) However, soon thereafter, Deputy Koger realized that Fulton did, in fact, have outstanding warrants and that he should not have been released. (Id. at ¶ 19.) Aycock subsequently learned of his termination after reading about it in the newspaper. (Id. at ¶ 21.) It is undisputed that Aycock had no history of disciplinary action during his employment with the Sheriff's Office other than a single, minor infraction that only resulted in a warning.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering whether to grant a motion for summary judgment, a court must assess the evidence offered by both parties and "determine whether there is a genuine issue for trial" after viewing the evidence in the light most favorable to the non-moving party and resolving all factual disputes in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). Nonetheless, this Court is not to make credibility determinations, as that task is for the fact finder. Anderson, 477 U.S. at 255.

To defeat a summary judgment motion, the non-moving party may not rest upon mere allegations or denials, but must "set forth specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (citing former Fed. R. Civ. P. 56(e)). In essence, the Court must decide if the evidence, when viewed in the light most favorable to the non-moving party, "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## III. Analysis

To establish a *prima facie* case for a discrimination claim based on race, a plaintiff must allege that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing at a level that met the employer's expectations at the time the

4

adverse action took place; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The test is slightly modified for discipline or discharge cases. In Moore v. City of Charlotte, the Court of Appeals for the Fourth Circuit held that the requirement of a *prima facie* case is met upon a showing that: 1) the plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and 2) disciplinary measures enforced against the plaintiff were more severe than those enforced against the other individuals (comparators). 754 F.2d 1100, 1105-06 (4th Cir. 1985). Accordingly, the Fourth Circuit requires that a claimant identify a person of a different class who engaged in similar conduct, but was disciplined in a less severe manner.[1] Id. Defendant conceded at oral argument that Plaintiffs have, in fact, established a case of *prima facie* race discrimination. Nevertheless, the Court feels it is appropriate to review the present record with regard to the issue.

1.   **Plaintiffs'** *prima facie* **case of discriminatory discharge**

   a)   **Plaintiffs have sufficiently alleged that they engaged in prohibited conduct similar to that of persons of a different race.**

In the Amended Complaint, Plaintiffs meet their burden of asserting a *prima facie* case of discrimination pursuant to the first prong of the Moore test. Specifically, Plaintiffs allege, without contradiction by Defendant, that:

---

[1] Plaintiffs are permitted to pursue race discrimination claims under Title VII, even though they are Caucasian and are not members of a "racial minority." In McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 723 (1976), the United States Supreme Court held that Title VII protects everyone, without regard to their race, from employment discrimination because of race.

> Since June 2006, there have been at least four other instances when sworn, African-American officers from the Sheriff's Office [] were not terminated even though that had prematurely and erroneously released inmates:
>
> a. One incident occurred about two months prior to Mr. Garrett's termination when Deputy Robert Kelley released inmate John David Young after Mr. Young had just been sentenced by the Circuit Court for the City of Richmond to four and one-half years in prison on 17 felony charges.
> b. A second incident occurred on or about September 22, 2006, when Deputy Shawn Marshall negligently released an inmate.
> c. The third and fourth incidents were the fault of Sergeant Supervisor Stanley Morris, who negligently released inmates on two separate occasions - September 14 and September 27, 2006. Sergeant Supervisor Morris' latter mistake occurred on the same day as Mr. Garrett's mistake.

(Am. Compl. ¶ 23.) In fact, according to Plaintiffs' assertions, the accidental release of inmates is not uncommon in the Richmond City Sheriff's office. (Id., ¶¶ 24-26.)

### b) **Plaintiffs have asserted that disciplinary measures enforced against them were more severe than those enforced against others similarly situated**

At the time of their termination, Plaintiffs were the *only* employees to ever be terminated for improperly releasing an inmate. In response, Defendant contends that he did, in fact, terminate an African American subordinate for inadvertently releasing an inmate who was not scheduled for release. However, the termination occurred *after* local media coverage of Plaintiff Garrett's termination. Moreover, the other officers who were involved in the incidents concerning the Plaintiffs received either temporary suspensions (some of which were not actually served), or no discipline at all. Based on such allegations that are not contested and must therefore be considered as true, Plaintiffs have established a *prima facie* case of racial discrimination in regard to their respective discharges.

## 2. Defendant's Non-Discriminatory Reasons for the Discharges

Once the plaintiff establishes a *prima facie* case, McDonnell Douglas mandates that the defendant has the burden of articulating a legitimate, nondiscriminatory reason for the action. The Supreme Court has clarified what "articulate" means; specifically, that the defendant has the burden only of introducing admissible evidence sufficient to create a question of fact without also having the a burden of persuasion as to the issue. Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Id. (internal citations omitted). While the evidence underlying the *prima facie* case remains available for consideration by the fact finder as to the ultimate issue, the presumption of unlawful motive is rebutted once the defendant has met its Burdine burden.

Defendant's central, nondiscriminatory reason for the termination of Plaintiffs, as contrasted with only the suspension of similarly situated African American employees, is that Defendant relied on the recommendations for dismissal by the Sheriff Office's Internal Affairs Division. (Def.'s Mem. at 3.) According to Defendant, at the conclusion of each investigation, Investigator Bart (who is Caucasian) recommended that each Plaintiff be terminated and Defendant simply agreed with the recommendation. (Id. at 6, 10.) As to the incidents where inmates were mistakenly released and the responsible employees, some of whom were African American, were not terminated, Defendant emphasizes that the incidents involved members of various races, and that in many cases, an African American who was involved, received the most

severe discipline imposed.  (See id. at 18.)  Defendant also notes two incidents in which inmates were mistakenly released and no employee, regardless of their racial composition, was punished as a result.  (Id. at 10-11.)   Accordingly, Defendant has met his burden of articulating a non-discriminatory reason for the actions he took in regard to the Plaintiffs, at least for purposes of resolving the instant motion.

**3.     Plaintiffs' Burden of Proving Pretext**

Where Defendant has articulated a nondiscriminatory reason for the discharge of Plaintiffs, the burden shifts back to Plaintiffs to establish that the reason is merely a pretext for discrimination.  The Court in Burdine held that the ultimate burden of persuasion for establishing a McDonnell Douglas individual disparate treatment case remains with the plaintiff: "She must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision.  This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination.  She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256 (citing McDonnell Douglas, 411 U.S. at 804-05).

As suggested in McDonnell Douglas, one way to establish pretext is to demonstrate that the employer treated the plaintiff differently than it treated others who were similarly situated.  Case law differs on how restrictive courts have been in requiring proof that the comparators are similarly situated in "all relevant respects" in terms of requiring that the plaintiff establish that he was treated differently than other employees whose violations were of comparable seriousness. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 58 (1st Cir. 1999); Lynn v. Deaconess Med.

Ctr.-West Campus, 160 F.3d 484, 487 (8th Cir. 1998). The issue here cannot be resolved, however, on summary judgment.

**4.     Disputed Issues of Material Fact**

Plaintiffs argue in their response to Defendant's motion that there are simply too many genuine issues of disputed material fact for summary judgment to be granted at this stage of the proceedings. (Pls.' Mem. at 22.) The main dispute of material fact is, indeed, whether or not Defendant Woody's decisions to terminate Garrett and Aycock were improperly motivated by racial animus. Where the Plaintiffs have established a *prima facie* case of discrimination, as agreed by the parties, and the defense has articulated a legitimate, non-discriminatory reason for the adverse employment actions, the remaining element of whether such a proffered rational is simply pretextual is necessarily a matter of disputed material fact that must be resolved by the fact finder.

The fact finder must likewise determine whether the comparators presented are similarly situated in all relevant respects; or stated another way, whether the facts surrounding the discipline of other employees who engaged in the same conduct indicate that there was no appreciable difference between these employees' conduct and that of Plaintiffs other than race. Accordingly, whether Defendant's motivation was pretextual or not is a question of fact that must be resolved by the fact finder, and cannot be decided on summary judgment.

Moreover, another dispute of material fact exists as to whether the demotion of Plaintiff Garrett was the only other instance in which Garrett received discipline for his actions. Such a circumstance is material because Garret's disciplinary record is relevant in determining whether the African American employees who were not terminated for also negligently releasing inmates

were, in fact, similarly situated in all relevant respects. In his deposition testimony, the Defendant asserts that Garrett was previously disciplined for failing to sign a logbook and that "his whole folder was full of violations when I got there. It's a wonder that he was even allowed to be a deputy. It amazed me." (Woody Dep. at 46-47, 50.) Plaintiff Garrett responds by asserting that the other alleged infractions identified by Defendant had not been finally resolved on administrative appeal and that he was improperly disciplined for racial reasons in any event. (Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J. (Pl.'s Resp.) at 7.)

Yet another disputed material fact is Defendant's asserted rationale for having terminated Deputy Spellman, the African American female deputy who was fired for also negligently releasing an inmate. It is the fact finder's province to determine whether Defendant terminated Spellman in an effort to "cover his tracks," so to speak, since Spellman was terminated *after* the media coverage of Garrett's termination; or whether Defendant instead decided to "change horses in mid-stream" in terms of how he would resolve such disciplinary issues in the future.

There is also a dispute of fact as to whether Plaintiff Garrett was ordered to release inmate Boyd by his supervisor, Sergeant David (an African American male), or whether he did so of his own accord. On the one hand, Garrett asserts that he released inmate Boyd pursuant to an order from Sergeant David. (Am. Compl. ¶ 4-6.) Defendant, on the other hand, contends that "plaintiff Robert Garrett checked for outstanding warrants on Boyd [the erroneously released inmate] and another inmate. When the checks came back negative, Garrett released both inmates. Sgt. David then asked Garrett if he had released both Boyd and the other inmate, and at that time Sgt. David informed Garrett that Boyd was not supposed to be released." (Def.'s Mem. at 6.) Likewise, there is a dispute of fact as to whether Sergeant David ordered Plaintiff Aycock

to release inmate Fulton. Defendant contends that Sergeant David only ordered Aycock to release a second, different inmate, and not Fulton. (Def.'s Mem. at 9.) Plaintiff Aycock disputes the assertion.

Such disputed facts are material because their resolution determines whether Defendant engaged in unlawful race discrimination as alleged.

## IV. Conclusion

For the reasons discussed herein, this Court RECOMMENDS that Defendant's motion for summary judgment (docket entry no. 35) be DENIED because of the existence of disputed material facts.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Date: 3/21/08